**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
1500 SW First Avenue, Ste 1000
Portland OR  97201
Telephone: 503/345-5497


Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LORI BELL,**<br><br>                    Plaintiff,<br><br>     v.<br><br>**CLACKAMAS COUNTY,** a local government, and **GREG GEIST,** an individual**,**<br><br>                    Defendant. | **CASE NO. 3:22-CV-01885-AN**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*Oral Argument Requested* |

## TABLE OF CONTENTS

I.    *STATEMENT OF FACTS* ...................................................................... *1*

II.   *LEGAL STANDARD ON SUMMARY JUDGMENT*....................................... *12*

III.  *ARGUMENT*........................................................................................ *13*

**Page i – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**a.    Plaintiff's Discrimination Claims: There Is An Issue Of Fact As To Whether Plaintiff Was Subjected To A Hostile Work Environment Because Of Sex**...................... **13**

**b.    Plaintiff's Discrimination Claims: There Is An Issue Of Fact As To Whether Rotrock's Conduct Was Severe Or Pervasive.**.................................................................. **14**

**c.    Plaintiff's Retaliation Claims: There Are Issues Of Fact As To Causation That Requires Denial Of Defendants' Motion**.................................................................. **18**

    i.    Bell establishes a causal link based on closeness of time............................. 19

    ii.    Bell Establishes A Causal Link Based On Pretext........................................ 22

    iii.    Defendants' Reasons for Termination Are Unworthy of Credence............................ 23

    iv.    Defendants Failed To Follow Its Own Policies In Both Its Termination Of Plaintiff And Its Handling Of Plaintiff's Complaints And Its Investigation Into Plaintiff's Harassment Concerns Was A Sham. ........................................................................ 24

    v.    Plaintiff Has A History of Good Performance............................................. 27

    vi.    There Is An Issue Of Fact As To Defendant Clackamas County's Retaliatory Culture And Treatment Of Women. ...................................................................... 28

    vii.    Storey's Mendacity Creates An Issue Of Fact As To Pretext And Causation............. 30

*IV.    SUMMARY.* ...................................................................................... ***30***

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S.  (1970).............................................................. 12

*Allen v Iranon*, 283 F3d (9th Cir 2002) ...................................................... 19, 20

*Anthoine v. N. Cent. Counties Consortium*, 605 F.3d (9th Cir. 2010)........................... 20

*Arnold v. Pfizer, Inc.*, 970 F Supp 2d (D Or 2013)................................................. 24, 27

*Balint v. Carson City, Nev.*, 180 F.3d 1047 ............................................................ 12

*Bell v. Cameron Meadows Land Co.*, 669 F.2d  (9th Cir. 1982) ............................... 13

*Bevan v. Honeywell, Inc.*, 118 F.3d (8th Cir. 1997) .............................................. 28

*Bland v. Fairfax Cty.,* No. 1:10cv1030 (JCC/JFA), 2011 US Dist LEXIS 86014 (ED Va Aug. 3, 2011).......................................................................................................... 16

*Brooks v. City of San Mateo*, 229 F3d (9th Cir 2000) ....................................... 15, 16, 17

*Burrell v. Star Nursery, Inc.,* 170 F3d (9th Cir 1999) .......................................... 14

*Celotex Corp. v. Cartett*, 477 U.S.  (1986) .......................................................... 12

*Chuang v University of California Davis*, 225 F3d (9th Cir 2000) ............................ 30

*Conway v. Electro Switch Corp.*, 825 F.2d  (1st Cir. 1987) ................................... 28, 30

*Coszalter v City of Salem*, 320 F3d (9th Cir 2003) .......................................... 19, 20, 21

*Davis v. Team Elec. Co.*, 520 F.3d (9th Cir. 2008)................................................. 16

**MATTHEW C. ELLIS, PC**
1500 SW First Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 345-5497

Davis, 526 U.S. .................................................................................................................... 15

*Diaz v. Eagle Produce, Ltd.,* 521 F.3d (9th Cir. 2008)................................................ 24, 27

*Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d (1st Cir. 2002) ................................... 28

*Dominquez-Curry, supra,* 424 F3d ............................................................................... 22

*Draper v. Coeur Rochester*, 147 F3d (9th Cir 1998)...................................................... 14

*Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d (9th Cir. 2011) ...................................... 24, 26

*EEOC v. Sears Roebuck & Co.*, 243 F.3d (4th Cir 2001).............................................. 22

*Eller v. Prince George's Cty. Pub. Schs*, 580 F Supp 3d (D Md 2022)......................... 16

*Ellison v. Brady*, 924 F.2d (9th Cir. 1991)................................................................. 14, 15

*Emeldi v. University of Oregon*, 638 F.3d (9th Cir. 2012) ............................................ 24

*Erickson v. Wis. Dep't of Corr.*, 469 F.3d (7th Cir 2006)............................................. 16

*Estes v. Dick Smith Ford, Inc.*, 856 F.2d (8th Cir.1988) ............................................. 29

*Feltner v. Title Search Co.*, Nos. 97-1087 & 97-3413, 1998 U.S. App. LEXIS 21691 (7th Cir Sep. 2, 1998) ................................................................................................................ 16

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 1968) ...................................... 13

*Fred Meyer, Inc. v. Bureau of Labor & Indus.*, 152 Or App (1998). ........................... 15

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th (9th Cir. 2021)................................ 15, 16, 18

*Fuller v. City of Oakland*, 47 F3d (9th Cir 1995) ........................................................ 14

*Fuller v. Idaho Dept. of Corr.*, 865 F.3d (9th Cir. 2017) ............................................ 15

*Gordon v. United Airlines, Inc.*, 246 F.3d (7th Cir 2001)............................................ 22

*Harris v. Forklift Sys.*, 510 US 17, 21–22 (1993)................................................... 14, 15

*Herbert v Altimeter, Inc.*, 230 Or App 715, 723, 218 P3d (2009) ............................... 22

*Heyne v. Caruso*, 69 F.3d (9th Cir. 1995).................................................................... 29

*Heyne*, 894 F.2d ........................................................................................................... 29

*Hooks v. Works*, 14 F App'x (9th Cir 2001)................................................................. 27

*Howard v. City of Coos Bay*, 871 F.3d (9th Cir. 2017) ............................................... 20

*Int'l Bhd. Of Teamsters v. United States*, 431 U.S. (1977)........................................... 29

*Ireland v. Mitchell*, 226 Or 286, 292–295, 359 P2d (1961)......................................... 22

*Keyser v Sacramento City Unified School District*, 265 Fed (9th Cir 2001)................. 13

*Lester v. Dep't of Rehab. & Corr.*, 2022-Ohio-2729,  (Ct Cl) .............................. 17, 18

*Little v. Windermere Relocation, Inc.*, 301 F.3d (9th Cir. 2001).............................. 5, 28

*Little v. Windermere Relocation, Inc.*, 301 F.3d (9th Cir. 2002) ............................ 15, 28

*Lowe v. City of Monrovia*, 775 F.2d (9th Cir. 1985) ............................................. 13, 19

*Marable v Nitchman*, 511 F3d (9th Cir 2007) ............................................................ 19

*Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d (4th Cir.1988) ........................ 29

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d (9th Cir. 2000) ....................... 14

*Obrey v. Johnson*, 400 F.3d (9th Cir. 2005) ............................................................... 29

*Perry v. Costco Wholesale, Inc.*, 123 Wash App 783, 789, 98 P3d (2004)................... 16

*Poland v. Chertoff*, 494 F.3d (9th Cir. 2007) ........................................................ 19, 20

*Porter v. Cal. Dep't of Corr.*, 383 F.3d (9th Cir. 2004) .......................................... 19, 24

*Ray v. Henderson*, 217 F.3d (9th Cir. 2000)................................................................ 20

*Reeves v. Sanderson Plumbing Prods.* Inc., 530 U.S. (2000).................................... 23

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d (2d Cir. N.Y. 2001).................... 29

*Spulak v. K Mart Corp.*, 894 F.2d (10th Cir. 1990)..................................................... 29

*St. Mary's Honor Ctr. v. Hicks*, 509 US (1993).......................................................... 30

**Page iii –PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Tomka v. Seiler Corp.*, 66 F.3d (2d Cir. 1995) ................................................................... 17
*Ulrich v. City & Cty. of S.F.*, 308 F3d (9th Cir 2002) .......................................................... 19
*Village of Arlington v Metropolitan Housing Development Corp*, 429 US (1977) ............... 24
*Wallis v. J.R. Simplot Co.*, 26 F. (9th Cir. 1994) ................................................................. 13
*Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d (9th Cir. 2001) ......................... 19

**Statutes**

42 U.S.C § 1983 .................................................................................................................... 13
42 USC §2000e-3(a) .............................................................................................................. 18
The Equal Protection Clause of United States Constitution ................................................. 13
Fed. R. Civ. P. 56 .................................................................................................................. 12
ORS 659A.030 ...................................................................................................................... 13
ORS 659A.030(1)(f) ............................................................................................................. 18
Title VII ................................................................................................................................ 13

**Rules**

9th Cir. UCJI 10.5. ................................................................................................................ 14
9th Cir. UCJI 1.14 ................................................................................................................. 22
9th Cir. UCJI 10.5 ................................................................................................................. 14

**Page iv –PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants seeks summary judgment dismissing Plaintiff's claims. This memorandum responds to the arguments raised in Defendants' Motion.

As a threshold matter, Defendants do not contend there are no factual disputes as to facts asserted in its Statement of Facts yet have not drawn all inferences in favor of the non-moving party, especially in matters pertaining to Plaintiff's job performance. Thus, the Court should reject Defendant's Statement of Facts as a jury argument on the weight of the evidence. Plaintiff submits the following Statement of Facts in its place.

## I.    STATEMENT OF FACTS.

**Plaintiff starts work in October 2020.** Plaintiff was employed by Defendant Clackamas County in its Water Environment Services ("WES") department as a Policy, Performance, Research Analyst from on or about October 12, 2020 through on or about October 5, 2021. Complaint and Answer at ¶ 3. Ex 9. Plaintiff's hire was probationary for the first year, meaning that she was essentially "at will" for the first year and not subject to the "just cause" provisions of the otherwise applicable collective bargaining agreement. *See* Ex 1.  Plaintiff was hired into a newly created position which was remote because of COVID. Bays Dep. 44:2-15. Notwithstanding the remote nature of the work, Plaintiff had daily interactions or meetings with her supervisor, Chanin Bays, for many months. Bell Dep. 14:22-15:6; Bays Dep. 46:17-48:22.

**Plaintiff's first six months of employment goes well.**  Plaintiff was able to accomplish all of her work goals without significant issues, even with COVID restrictions in place. *See* Bell Dep. 16:6-9; 17:15-18:9; 24:12-17. Plaintiff found Bays supervision "productive" and "supportive." Bell Dep. 58:13-22.  Bays gave specific feedback with opportunities for additional training, as needed, which Plaintiff appreciated. Bell Dep. 58:13-22.  Bays also provided Plaintiff

**Page 1 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

a 6-month review; the only review she received while at the County. Ex 10: Bell Dep. 60:18-61:20. Bays Dep. 48:23-49:10.

Bays agreed that Plaintiff was doing a good job. In her review, Bay wrote that "Lori has made great progress" and that she was "passionate, engaged, coachable and dedicated, and open to feedback";  all positive and important traits for people at WES. Bays Dep. 51:2-10; 53:21-25.[1] Her review, as appropriate, was not without constructive criticism. For example, she noted that Plaintiff tended to talk with her hands and telegraphs her feelings through her expressions and movements, which could be distracting during zoom meetings. Ex 10: Bays Dep. 54:1-56:13. While this and other criticisms were fair as to Plaintiff, Bays acknowledged that she was having very similar conversations with "everyone on my team," not just Plaintiff.  Bays Dep. 56:14-24.

WES policy permits a supervisor to get feedback from co-workers, but only with the reviewed employee's permission.  Ex 2, p 2. Geist Dep. 40:12-41. Bays knew of this policy and solicited input from Plaintiff's co-workers, with Plaintiff's permission, who were overwhelmingly positive. Bays Dep. 57:4-58:6, 59:18-62:23. Ex 30-32. Even when there were critiques of her work, people characterized those critiques as  "minor." Bays Dep. 63:25-64:5. Ex 31.  Bay closed the review, writing:

> As we bring the first 6 months to a close, I feel confident that Lori is on the right track and will continue to grow and thrive in her role at WES. Especially as she is grounded in her new role and feeling connected to what we do. Thanks Lori! I appreciate that you bring out my extra!!!  ☺

Ex 10.

Bays admits that if she had any serious concerns about performance there were many tools a manager can use to counsel an employee, including corrective counseling, verbal

---

[1] While Chris Storey's name is on the review document, Bays actually wrote the review, which only covered time in which Plaintiff reported to Bays. Bays Dep. 48:24-50:7.  Storey did not provide any feedback on the review to Bays. *Id*.

**Page 2 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

warnings, written warnings, involving HR to assist and more, but that she didn't need to take any of those more severe steps with Bell. Bays Dep. 67:13-71:17.  All in all, Bays "absolutely" saw Bell on a very positive trajectory after six months. Bays Dep. 67:10-12. Ex 27, p 5.

**Plaintiff reports to Chris Storey for next six months of probation and receives no negative feedback.**  In April 2020, after six months of reporting to Bays, Plaintiff shifted to reporting to Chris Storey upon Bay's transfer to another department at the County. Bell Dep. 25:8-14.

When Storey became her supervisor, Plaintiff interacted with him less frequently. However, she was still able to get clarity on projects and ask questions as needed.  Bell Dep. 64:18-65:10.  Bell met with Storey on a weekly basis and would recap her work for the week and provide Storey with written documentation to guide their weekly check-in meetings. Bell Dep. 68:1-69:12. Neither during these meetings nor at any other time did Storey ever tell her she was not meeting expectations or was otherwise doing work in an unsatisfactory manner. Bell Dep. 65:11-23. Meanwhile, Bays, who kept working for the County, continued to hear positive feedback from Plaintiff's colleagues about Plaintiff's work performance. Bays Dep. 104:17-105:4.

Storey knew how to provide feedback and was familiar with County policies on how to supervise subordinates. He attended County Leadership training where there was discussion of the requirement to provide specific feedback to employees as to what they are doing well and what they were not doing well, contemporaneously.  Storey Dep. 45:1-12. He believes that you should never be surprised about what is in a formal review (or in a termination letter) because you should be getting constructive feedback about your strength and weaknesses before that time. Storey Dep. 68:22-69:4. Ex 3, p 2. That said, Storey admits that there is not much in the

**Page 3 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

way of contemporaneously documented feedback in his supervision of Plaintiff and that he never clearly informed Plaintiff that she was not meeting performance expectations. Storey 137:3-138:13. Ex 27.

**The County and WES follow a practice of progressive discipline.** Greg Geist was the Director of WES. Dkt 9 at ¶ 5. Geist created and implemented a department-wide specific policy that governs how to supervise employees and provide progressive discipline and appropriate feedback. Geist Dep. 34:16-35:18. In addition to these department-wide policies, there are also county-wide polices that require employees to be informed to expected standards of performance and requires supervisors to address deficiencies right away. Geist Dep. 46:15-47:8. Ex 4. According to Greg Geist, progressive discipline means that there is feedback that proceeds progressively, from coaching to a performance improvement plan, to a warning to termination based on the nature of any performance deficiencies. Geist Dep. 24:2-25:19.

**The August 3, 2021 National Night Out Event Changes Everything.** On August 3, 2021, Plaintiff attended the "National Night Out" event as a representative of the County at a park in Happy Valley, Oregon. Answer at ¶ 6. Also in attendance was another County employee, Kevin Rotrock, whom Plaintiff had not previously met. Plaintiff observed that Rotrock was more interested and engaged when talking to female visitors who approached him than male visitors but didn't think much of it at the time. Bell Dep. 92:21-93:4.

As the event ended, Plaintiff proceeded to pack up her pop-up tent and asked Rotrock for assistance putting the tent in her car. Bell Dep. 91:9-15. Answer at 7. While they were pulling the top of the tent, Rotrock made an aggressive, sexual comment to Plaintiff, stating, "We could tie you up and stuff you in the back of the car, too." Bell Dep. 91:16-23. Plaintiff didn't appreciate the comment. The interaction made her feel betrayed, devastated, paralyzed and

**Page 4 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

powerless. Bell Dep. p. 129-130.  She found it humiliating, degrading, shameful and disruptive. Bell Dep. p. 127-129.

**Plaintiff reports the interaction to Chanin Bays.** On or about August 9, 2021, Plaintiff reported Rotrock's comments to Chanin Bays, who was working in County Administration.  Dkt 9 (Answer) at 7-8. Bell Dep. 97:13-18. Bays Dep. 99:3-9. Plaintiff was visibly upset when she spoke to Bays and was crying. Bays Dep. 78:8-11. Plaintiff told Bays that she didn't know if she had done or said something to Rotrock to encourage such a wildly inappropriate comment, and wondered if the way she was dressed had led him on in some way. Bays Dep. 86:4-10. Bays, based on her training and experience, recognized that Plaintiff's fear and shame as a trauma-response. Bays Dep. 87:17-22.

Bays was startled by Plaintiff's report and apologized. Bays Dep. 77:2-18, 99:10-15. She recognized that Plaintiff was reporting facts that implicated both the sexual harassment policy and workplace violence policy of the County, both of which have specific investigation procedures. Bays Dep. 78:12-79:18. Ex 5, p 4-5. Plaintiff told Bays that she was concerned about Plaintiff's career if she reported Rotrock but ultimately agreed that it was okay for Bays to contact HR on her behalf. Bell Dep. 99:16-100:15. Bays Dep. 78:17-23. Bays recommended she reach out to EAP and to create a safety plan to make sure she is not in an unsafe position with Rotrock anytime soon. Bays Dep. 79:19-80:8.

**HR and Greg Geist are notified of the allegations.**  Also on August 9, 2021, Bays spoke to Erin Knapp in HR, on Plaintiff's behalf, and reported that Rotrock had told Plaintiff, "I could tie your hands behind your back and shove you in the truck" or words to that effect. Bays Dep. 86:13-19: Ex 33. Bays Dep. 80:16-81:9. Dkt 9 (Answer) at 7-8. Knapp acknowledged that the report implicated County sexual harassment policy. Knapp Dep. 36:23-37:19. In the conversation, Knapp asked Bays if she was surprised by the report by Bell. Bays told her she was not surprised because she had worked with Rotrock before and had "creepy" interactions with him. Bays Dep. 81:8-23. 84:17-19. Bays was

**Page 5 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

referring to Rotrock as having a history of being inappropriately flirty with Bays and others, touching Bays inappropriately and because she had witnessed him make inappropriate comments and gestures toward other women, as well. Bays Dep. 81:10-83:19.  Greg Eyerly, Rotrock's supervisor, also was aware of a previous complaint of Rotrock even having sex with a colleague while on County property. Eyerly Dep. 42:14-47:22. Bays also told Knapp that Rotrock has previously been laid off from his position at the County because he had "made women uncomfortable" and was only rehired because he had "bumping rights" to the position. Bays Dep. 88:24-89:24.

Knapp then promptly spoke with Greg Geist to alert him of the complaint by Bell.  Geist Dep. 72:17-19; Knapp Dep. 65:24-66:20.  Geist admits that when he heard of the allegations that he was shocked. He, like Bays, saw the allegations as "egregious" and, like Bays, acknowledged that they potentially implicated both the sexual harassment and workplace violence policies. Geist Dep. 76:18-77:17.   A few days later, on August 16, 2021, Knapp and Geist spoke again. During the call they discussed both the sexual harassment allegations and, for the first time, very limited concerns Geist had heard about Plaintiff's performance, too. Knapp Dep. 83:7-89:14. Ex 14.

**Plaintiff speaks with HR and Geist about the allegation.**  On or about August 19, 2021, at Knapps's behest, Plaintiff reported her concerns regarding Rotrock to Geist. Geist asked if Plaintiff had possibly misheard Rotrock. Dkt No 10. He stated if it would be different if he had actually said he wanted to tie the tent up and stuff  "it" in the back of the car, instead of tie *her* up and stuff *her* in the back of the car with the tent. Bell Dep. 108:8-15. Plaintiff said that of course it would be different but that if that was what he had said she would not have contacted HR. Bell Dep. 108:14-19.  Geist seemed "put out" by her response and stated, "Well, we will have to do an investigation now," to which Plaintiff responded,  "Yes, I would like an investigation."  Bell Dep. 108:14-25.

Immediately after the meeting, Plaintiff saw Geist go to Storey's office and shut the door.

**Page 6 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Storey claims he knew of the sex harassment allegations by Plaintiff as of approximately August 10, 2021, meaning he was alerted of the allegations almost immediately after the complaint was made.  Storey Dep. 98:24-100:11. At around this time,  Storey and Geist had made an "affirmative decision" that Storey would deal with any alleged performance issues for Bell, while Geist and Eyerly, Rotrock's supervisor, would deal with the sexual harassment part of the investigation at the same time. Storey Dep. 102:14-103:21; 105:24-106:19.

On August 25, 2021, Plaintiff had a second interaction with Rotrock, where he came up to her from behand and grabbed her, firmly, on the shoulder. Bell Dep. 110:2-111:20. Answer at 12. Plaintiff was shocked when she realized who it was.  While the touching was nowhere near as blatantly offensive as the first interaction on August 3, the context for the interaction was unusual. After all, if Rotrock had been spoken to about the prior incident, it would be very unusual for him to touch her at all, let alone harshly, on her shoulder. Bell Dep. 113:25-114:6.  And, if he had not been spoken to, then she had questions about whether her concerns were being treated seriously.[2] Plaintiff reported the interaction to Bays.  Bays Dep. 99:11-20. She also reported it to  Erin Knapp, who encouraged Plaintiff to alert Geist of this second unusual interaction. Bell Dep. 112:24-113:15.

**Greg Eyerly investigates Plaintiff's allegations and minimizes Rotrock's evasive answers.** On August 25, 2021, Rotrock's supervisor, Greg Eyerly, spoke with Rotrock at Geist's behest about Bell's allegations. Eyerly Dep. 52:9-57:9; 63:13-64:21.  The conversation with Rotrock took place in a parking lot. Eyerly Dep. 67:4-10.  Initially, Eyerly asked if he remembered anything about an interaction with Plaintiff at the end of the National Night Act event and Rotrock was not forthcoming. Rotrock said he didn't recall any conversation with Bell

---

[2] Rotrock provided conflicting testimony about whether he knew of the complaint prior to touching Bell on August 25, 2021. *Compare* Rotrock Dep. 41:8-42:5 (saying he knew of the allegations before he touched Bell on the shoulder) *with* Rotrock Dep. 55:3-24 (saying he would not have touched her on the shoulder if he had known of the allegations) *with* Dep. Ex 57:6 - 58:9 (conceding he doesn't recall whether he knew of the allegations or not, and that his testimony is purely speculative.)

Page 7 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

about putting a tent in the truck and that it was loud and hard to hear at the time and didn't recall

what, if anything, was said.  Eyerly Dep. 69:11-70:22. When Eyerly confronted him with the

specific allegation, Rotrock didn't deny making the comment, responding "That doesn't sound

like something I would say."  Eyerly thought his answer was "off" and evasive.  Eyerly Dep.

73:19-25.  Frustrated by this response, Eyerly asked again.  Eyerly Dep. 69:11-70:20; 72:20-

73:22.  When asked a third time, Rotrock conceded that he must have said something like, "We

could tie it up and throw it into the trunk."  Eyerly Dep. 70:11-13.

Eyerly thought Rotrock had provided conflicting and inconsistent information, by first

not recalling the conversation, then blaming the loud environment and claiming he couldn't hear,

, then claiming he did recall the conversation, and then saying he must have said something

different. Eyerly Dep. 72:20-75:18. Eyerly admits that he could not really decide whether

Rotrock was being truthful without also speaking with Bell and, if it was a "real investigation,"

he would would have sat down with Bell and "heard her side of the story prior to even talking

to—to Kevin. Absolutely." Eyerly Dep. 93:9-22.

Eyerly never spoke with Plaintiff. Instead, he reported his findings to Geist that same

day. Ex 15. He told Geist he believed Rotrock over Bell—even though he never spoke with Bell

—and didn't tell him that Rotrock was evasive, "off" or provided conflicting information. To the

contrary, he said, "there is nothing about Kevin's body language, pitch of voice or any change in

the cadence of words that indicated he had any concern about what he said or happened that

night. It was my observation that Kevin was telling me what he believed to be the truth." Ex 15:

Eyerly Dep. pp 72-75.

On August 25, 2021, Geist reached out to Plaintiff and told Plaintiff that Eyerly had

confronted Rotrock and that they had determined that Plaintiff had simply misheard Rotrock.  He

**Page 8 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

said that Eyerly was a trained interrogator, was good at telling if people were lying and that Rotrock was not lying about the incident.  Bell Dep. 115:16-116:10.  Defendants closed the sexual harassment investigation that day.

**Both after the harassment complaint was made and while the matter was being investigated, Defendants take steps to terminate Plaintiff's employment.** Right after Storey learned Bell had alleged sexual harassment against Rotrock, he received a notification that Bell was up for her final probationary review.  Storey Dep. 101:17-103:21; Ex 42. Storey admits that he didn't talk to anyone about even the concept of terminating Bell until after he had learned that Bell had reported harassment, and after her allegations were being investigated. Storey Dep. 139:17-140:14. However, he tried to make his recommendation to terminate independent of the harassment allegations because he had anticipated that one could make an "obvious connection" between the termination recommendation and the complaint of harassment. Storey Dep. 145:16-14.

In early September 2021, Storey solicited feedback from co-workers about Bell's employment, without Plaintiff's consent, in violation of County policy. See Ex 2, p. 2. While one colleague was critical of Plaintiff, most others were positive. Storey Dep. 122:22-124:25. Ex 45-47. However, Storey disregarded the positive feedback and only provided HR and Geist with the negative feedback he had received, because only the negative feedback supported the conclusion that she should be terminated; the end he sought to achieve. Storey Dep.  142:12-144:23; Ex 21.  Geist admits that Storey never told him about the positive reports he had received about plaintiff's work. Geist Dep. 133:1-11.

Plaintiff had no idea that she was being potentially set for termination. As a result,  she begun work on her portion of her one-year review. She did this because Storey had previously told her it was time for her one-year review—something that only occurs if one is not being terminated. Bays

**Page 9 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Dep. 110:6-18. Plaintiff continued to be excited about her ongoing employment with the County unaware of what was coming down the pike. Bay Dep. 103:5-21.

**A few weeks later, Defendants provided Plaintiff with a notice of proposed termination.** According to Storey, it was not until sometime between September 9-14, 2021—a week or two after the harassment investigation ended on August 25, 2021—that he started leaning toward recommending termination of Bell's employment. Storey Dep. pp 121:3-122:19. Plaintiff was completely surprised by the proposed termination since she had no indication from Storey that she was not performing well, at all.  Bell Dep. 65:24-66:9; pp 76-77.  In fact, the first time Storey provided Plaintiff with information that she was not meeting expectations was in the termination meeting. Bell Dep. 65:24-66:9.  Plaintiff contacted Bays immediately and Bays, too was shocked. Bell Dep. 138:15-22; Bays Dep. 104:3-7.  Because the termination did not conform with the reality of her work, and because it was so soon after opposing discrimination, both Bays and Bell thought the termination was retaliatory and suspect. *See* Bays Dep. 104:11-16.

**After plaintiff is terminated, Bays reports her concerns about Plaintiff's termination up the chain of command, as well as concerns about Storey's competence and dishonesty.** Bays was so concerned that the termination being retaliatory and ungrounded in plaintiff's actual work product that, unbeknownst to Plaintiff, she reported these concerns to Bay's supervisor and then to Erin Knapp in HR soon after the termination. Bays Dep. 105:14-106:3. In October 2021, Bays spoke with Knapp about her belief that the termination was unlawful and noted that Storey tends to "make things up" when it suits him, raising questions about his penchant for honesty and his competence as a supervisor. Bays Dep. 107:23-108:3, 109:2-22

Bays had a factual basis for her beliefs. Bays had worked closely with Storey and reported to him for years. Bays Dep. 20:5-17; 23:2-14. Bays did not have a positive experience

**Page 10 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

working with Storey. Bays Dep. 72:22-73:10. She felt undermined by him because he would give conflicting and unclear instructions depending on who was in the room with them. Bays Dep. 75:3-13. For example, he would order her to give an employee verbal warning employees without reason, and then, when that employee complained to Geist, refused to take responsibility for the decision, blaming Bays, instead. Bays Dep. 73:15-74:20. Bays had questions about his reputation for honesty based on her experience with Storey. Bays Dep. 109:16-22.

**When Bays concerns are investigated, Storey admits that he didn't give Plaintiff feedback on her performance before she was terminated, violated county policy, and resigns his employment soon after.** As part of their inquiry into Bay's concerns, Defendants spoke with Storey. Storey conceded that he did a poor job providing feedback to Plaintiff. Ex 27, p 5. At the County, supervisors are trained on the importance to directly informing staff if they fail to meet performance standards. Bays Dep. 117:16-24. Storey admitted that he never "informed Lori that she was failing to meet performance expectations." Ex 27. P 5.  At the County, supervisors are trained to ensure there is contemporaneous documentation of feedback given to employees. Bay Dep. 117:6-15. Storey admits that he did not provide contemporaneously documented feedback Ex 27, p 7.  Storey admits he attended County Leadership training where there was discussion of providing specific feedback to employees as to what they are doing well and what they were not doing well. Storey Dep. 45:1-12. He agrees that you should never be surprised about what is in a formal review because you should be getting constructive feedback about what you are doing well or not well before that time. Storey Dep. 68:22-69:4. Ex 3, p 2. Storey admits that there was not much in the way of contemporaneously documented feedback, and that he didn't tell Plaintiff that she was not meeting expectations. 137:3-138:13. Ex 27, p 5.  Based on his deficiencies, HR decided it was a

**Page 11 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

good idea to provide Storey performance counseling to strengthen his supervisory practices for probationary employees, specifically. Ex 27, p 7.  Storey Dep. 147:10-148:10.  However, this counseling never took place because, soon after, Storey resigned his employment with the County. Storey Dep. 147:10-148:10.

## II.    LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As the moving party, Defendants must first meet their burden to show "the absence of a genuine issue concerning any material fact."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).  To satisfy this burden, Defendants must present the portions of the record that demonstrate there is no issue of material fact.  *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986).   The court must "not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).

If the moving party meets its initial burden, the nonmoving party must then establish a genuine issue of material fact.  Fed. R. Civ. P. 56(e).  Plaintiff "may not rest upon the mere allegations or denials of his pleading . . . [the nonmoving party] must set forth specific facts showing that there is a general issue for trial."  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).  The court views evidence in the light most favorable to the nonmoving party.  *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  If Plaintiff establishes a *prima facie* case, then summary judgment is only appropriate if "evidence

**MATTHEW C. ELLIS, PC**
1500 SW First Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 345-5497

to refute [the moving party's] legitimate explanation is totally lacking." *Wallis v.*

*J.R. Simplot Co.*, 26 F.3d 885, 890-91 (9th Cir. 1994).

## III.    ARGUMENT

   a.   Plaintiff's Discrimination Claims: There Is An Issue Of Fact As To Whether
        Plaintiff Was Subjected To A Hostile Work Environment Because Of Sex.

Plaintiff brings claims under Title VII, ORS 659A.030 and the Equal Protection Clause

of the U.S. Constitution for a sex-based hostile work environment. Dkt. 1.Because disparate

treatment and Section 1983 claims require a showing of intentional discrimination, Title VII and

42 U.S.C § 1983 claims are treated similarly on summary judgment.  *Keyser v Sacramento City*

*Unified School District*, 265 Fed 741, 754 (9th Cir 2001).   A plaintiff who establishes a triable

issue of fact regarding discrimination under Title VII may proceed with a Section 1983 Equal

Protection claim.  *Lowe v. City of Monrovia,* 775 F.2d 998, 1010 (9th Cir. 1985).  Thus, Plaintiff

agrees with Defendants that, for purposes of Defendants' Motion, the Court can evaluate

Plaintiff's claims for discrimination and retaliation together under 42 U.S.C § 1983, Title VII

and ORS 659A.

To state a claim for a hostile work environment, a Plaintiff must show must show that 1)

she was subjected to verbal or physical conduct of a sexual nature; 2) this conduct was

unwelcome; 3) the conduct was sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment;  4) the plaintiff perceived the

working environment to be abusive or hostile; and 5) that a reasonable woman man in the

plaintiff's circumstances would consider the working environment to be abusive or

hostile.  Fuller v. City of Oakland, 47 F3d 1522, 1527 (9th Cir 1995) See also 9th Cir Instruction

10.5. (same)

**Page 13 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Defendant appears to move for summary judgment only as to element three—whether the conduct was sufficiently severe or pervasive—only. As a result, while Plaintiff has factual evidence in the record to inform all elements, Plaintiff does not discuss or analyze those facts or elements in response to this motion because a fair reading of Defendants' motion as to Plaintiff's discrimination claims, as opposed to the retaliation claims, encompass arguments as to this element, only.[3]

    b. Plaintiff's Discrimination Claims: There Is An Issue Of Fact As To Whether Rotrock's Conduct Was Severe Or Pervasive.

To establish a claim for sex-based hostile work environment, the plaintiff must show that the offensive conduct was sufficiently severe or pervasive to alter his or her conditions of employment. See *Harris v. Forklift Sys.,* 510 U.S. 17, 21–22  (1993); see also *Burrell v. Star Nursery, Inc.,* 170 F.3d 951, 954 (9th Cir 1999); *Draper v. Coeur Rochester*, 147 F.3d 1104, 1108 (9th Cir 1998). The requirement is stated in the disjunctive; severe or pervasive.  The Ninth Circuit has adopted the "reasonable victim" standard for this analysis. *Ellison v. Brady*, 924 F.2d 872, 878-80 (9th Cir. 1991). *See also* Comment to 9th Circ UCJI 10.5.   If the plaintiff/victim is a woman, the standard is a "reasonable woman" standard. *Ellison*, 924 F.2d at 879, n.11; *see also Fuller v. Idaho Dept. of Corr.*, 865 F.3d 1154, 1158 (9th Cir. 2017) (holding that because women are disproportionately victims of rape and sexual assault, "a jury armed with common sense and an appropriate sensitivity to social context could reasonably conclude that the actions of [a

---

[3] Further, Defendants only conferred as to the "severe and pervasive" element, In the event that Defendant's intended to file as to different elements or theories, Defendants has failed to meet its initial burden of production. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A moving party without the ultimate burden of proof at trial must:  (1) submit evidence negating an element of the nonmoving party's claims, or (2) show (other than with a conclusory statement) the evidence is insufficient to establish an essential element of the non-moving party's claim.  *Id.* at 1106.  When the moving party fails to sustain its initial burden, a District Court granting summary judgment commits reversible error.  *Id.* at 1107.

**Page 14 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

female plaintiff's supervisor, siding with the alleged male rapist over plaintiff,] were because of her sex").

Whether conduct is severe or pervasive is "not a mathematically precise test." *Harris v. Forklift Sys.*, 510 US 17, 22-23(1993). The required severity for "harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). A single incident of harassment can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis  for a single incident to suffice. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (citing *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 967 (9th Cir. 2002);  *See also Brooks v. City of San Mateo*, 229 F3d 917 (9th Cir 2000) (although hostile-environment claim might be based on one severe incident, one instance of groping by coworker did not meet test when employer took prompt action against harasser). On the other hand, conduct that is pervasive, even though not severe in each instance, will satisfy the "severe *or* pervasive" element. *Fred Meyer, Inc. v. Bureau of Labor & Indus*., 152 Or App 302, 304–305, 308–310, 954 P2d 804 (1998). In determining whether a workplace is objectively hostile, the court must considers "'whether it is physically threatening or humiliating." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); Davis, 526 U.S. at 650-51 "When severity is questionable, 'it is more appropriate to leave the assessment to the factfinder than for the court to decide the case on summary judgment.'" *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir 2021) (citing *Davis v. Team Elec. Co*., 520 F.3d 1080, 1096 (9th Cir. 2008)).

A threat of sexual assault can create a hostile work environment.  *Erickson v. Wis. Dep't of Corr.*, 469 F3d 600, 607 (7th Cir 2006). Even an implicit threat of sexual assault can give rise

**Page 15 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

to a hostile work environment. *Erickson v. Wis. Dep't of Corr.*, 469 F3d 600, 607 (7th Cir 2006). Threats of rape are sufficient to bring a claim for a sex based hostile work environment. *Eller v. Prince George's Cty. Pub. Schs*, 580 F Supp 3d 154, 172 (D Md 2022). *Feltner v. Title Search Co.*, Nos. 97-1087 & 97-3413, 1998 U.S. App. LEXIS 21691, at *9 (7th Cir Sep. 2, 1998) (even an indirect threat of rape can be a hostile work environment.) See also *Bland v. Fairfax Cty.,* No. 1:10cv1030 (JCC/JFA), 2011 US Dist LEXIS 86014, at *12 (ED Va Aug. 3, 2011) (employee who walked by plaintiff with a long pole and saying, in a sexual manner, "this looks like it would hurt" supports a hostile work environment.)

In *Perry v. Costco Wholesale, Inc.*, 123 Wash App 783, 789, 98 P3d 1264, 1266 (2004), the trial court was presented with a similar factual scenario as the present case. In that case, the female employee told a male co-worker she was leaving work, and the co-worker said that "she better before he threw her in the back of her truck and 'had his way with her.'" *Perry v. Costco Wholesale, Inc.*, 123 Wash App 783, 789, 98 P3d 1264, 1266 (2004) The Court, relying on 9th Circuit caselaw, found that these kinds of comments are facts that support a hostile work environment.

Defendant cites *Brooks v San Mateo* for the premise that a single instance of harassment is not enough to show a hostile work environment. Defendant misunderstands *Brooks*. In *Brooks*, the Ninth Circuit expressly stated that it was <u>not</u> deciding whether a single instance of sexual harassment can ever be sufficient to establish a hostile work environment under Title VII. *Brooks v. City of San Mateo*, 229 F.3d 917, 925 (9th Cir 2000). Rather, the court found that the single instance of nonviolent sexual assault was not pervasive and did not alter the terms and conditions of the plaintiff's employment not because the conduct was not severe or pervasive—but because the employer immediately and completely removed the harasser from the workplace ensuring

**Page 16 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

that the harassment was never repeated and entirely isolated and addresses. *Brooks v. City of San Mateo*, 229 F3d 917, 924 (9th Cir 2000).  After all, in *Brooks*, the employer had the harasser terminated and criminally prosecuted; resulting in actual jail time. Here, Defendant did a cursory, one-sided investigation of the facts that not only violated its only policies, it did not discipline the harasser—who had a history of inappropriate conduct and sexual innuendo—and instead took steps to immediately terminate Plaintiff despite evidence of her good performance by her and poor performance by her supervisor.   Thus, *Brooks* can be distinguished since the Court focused on the employer's response—not the severity of the harassment—in its termination.  If, like here, the response in *Brooks* was to terminate plaintiff in the wake of the severe or pervasive conduct, the *Brooks* analysis would be different as there would be no dispute about whether the terms of conditions of her employment were altered because of the harassment based on the employer's response.

Had Rotrock actually tied up Plaintiff, threw her in the back of the truck and sexually assaulted her, Defendants would likely concede that the conduct was severe or pervasive. See *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995). (even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and creates an abusive work environment for purposes of Title VII liability.) Yet, one need not wait and see if one is actually assaulted to bring a claim based on such threats. In *Lester v. Dep't of Rehab. & Corr.*, 2022-Ohio-2729, ¶ 15 (Ct Cl), the court addressed the same argument offered by Defendant in this case; that a single threat of rape by a co-worker is not sufficient to constitute a hostile work environment where the harasser did not make good on the threat. The Court rejected the argument as "preposterous." *Id*. Specifically, and keeping in mind that a Court must evaluate

**Page 17 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

whether the conduct at issue is " physically threatening or humiliating" in deciding whether there is a hostile work environment, the Court said

> "to conclude that a threat of rape coupled with an immediate physical threat of harm cannot facilitate sufficient anxiety and fear in a victim to amount to discriminatory changes in a victim's work conditions, merely because it is an isolated incident without an unwanted touching, would be a preposterous precedent. A completed rape or other unwanted touching is not required for this Court to conclude that an aggressor's actions are extreme enough to create a hostile work environment." *Lester v. Dep't of Rehab. & Corr.*, 2022-Ohio-2729, ¶ 15 (Ct Cl).

Here, the key facts at issue – the comment made during the National Night Out—are facts that, in the light most favorable to the non-moving party—are threats of sexual violence or rape, which may be physically threatening to reasonable woman.  Plaintiff testified she was crying when she reported the allegations and blamed her clothing for provoking the threat; evidence of trauma. Bays Dep. 87:17-22. Bays Dep. 86:4-10  The interaction made her feel betrayed, devastated, paralyzed, powerless, degraded and full of shame. Bell Dep. 129-130.   Thus, there is an issue of fact as to whether a reasonable woman in Plaintiff's position would feel the same way that requires denial of Defendants' motion. After all, "where are questions as to the severity of harassment, 'it is more appropriate to leave the assessment to the factfinder than for the court to decide the case on summary judgment.'" *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir 2021). Defendants' motion on Plaintiff's discrimination claims should be denied.

      c.   Plaintiff's Retaliation Claims: There Are Issues Of Fact As To Causation That Requires Denial Of Defendants' Motion.

ORS 659A.030(1)(f) and 42 USC §2000e-3(a) make it unlawful for an employer to retaliate against any employee who has opposed any unlawful employment practice.  To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action.  *Poland v.*

**Page 18 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Chertoff*, 494 F.3d 1174, 1179 (9th Cir. 2007).  Appropriately, Defendants do not dispute elements one and two and move for summary judgment on the causation element, only.

Any indication of discriminatory intent may suffice to raise a question that can only be resolved by a factfinder as to causation.  *Ulrich v. City & Cty. of S.F.*, 308 F3d 968, 980 (9th Cir 2002). *Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001);  (one needs "very little" evidence of motivation to survive summary judgment)  *see also Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1986) ("any indication of discriminatory motive … may suffice to raise a question that can only be resolved by a factfinder").

There are at least several recognized categories of evidence that are proof of retaliatory intent including a) proximity in time between protected conduct and b) evidence the reasons for the adverse action are false and pretextual.  *Ulrich v. City & Cty. of S.F.*, 308 F3d 968, 980 (9th Cir 2002); *Allen v Iranon*, 283 F3d 1070, 1077 (9th Cir 2002).); *Coszalter v City of Salem*, 320 F3d 968, 977 (9th Cir 2003).  Evidence of any one of these categories of causation is sufficient to create a fact issue for the jury. *Marable v Nitchman*, 511 F3d 924, 930 (9th Cir 2007).  Because Plaintiff has evidence of both of these categories, Defendants' Motion must be denied.

i.  Bell establishes a causal link based on closeness of time.

The Ninth Circuit emphasizes that causation is a required element of a retaliation claim, not temporal proximity.  *Porter v California Department of Corrections,* 383 F3d 1018, 1030 (9th Cir 2004).   Yet, at the *prima facie* stage of a retaliation case, the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.  *Poland, supra* at 1180 n. 2. Proximity in time *alone* may establish causation. *Anthoine v. N. Cent. Counties Consortium*, 605

**Page 19 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

F.3d 740, 751 (9th Cir. 2010).   This is because "[t]hat an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000).

 "A rule that any period over a certain time is *per se* too long … would be unrealistically simplistic." *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003); see also *Allen v. Iranon,* 283 F.3d 1070, 1078 (9th Cir 2002).  As the *Coszalter* court noted,

> "Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so. For a variety of reasons, some retaliators prefer to take their time. They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation.... There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation… the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment."

> *Coszalter, supra*, 320 F.3d at 978.

"Although there is no specified period in which an adverse employment action can automatically be held retaliatory, protected speech occurring 'within three to eight months of the adverse employment action is easily within a time range that can support an inference of retaliation.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1046 (9th Cir. 2017). Even an "(A)n eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory." *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002).

Here, Defendant argues that an even shorter gap—a six-week delay between opposing discrimination on August 9, 2021 and providing her notice of termination on September 23, 2021—is too long for one to infer causation based on timing alone. Yet, the September 23, 2021 notice of termination did not occur in a vacuum.  Storey made the decision to recommend

**Page 20 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

termination to Geist not on September 23, but weeks earlier.  Storey Dep. pp 121-122.  There is further evidence in the record that Geist and Storey discussed the complaint on August 9, 2021—the same day the complaint was received by Defendant—and the evidence suggests that Storey took steps to move toward termination within weeks, or even days, later.  Geist admits he talked to Knap—for the first time—about Plaintiff's performance less than a week after hearing of the allegations. Knapp Dep. 83:7-89:14. Ex 14.   Admittedly, the record is not entirely clear if was days or weeks that Defendants first started to have discussions regarding Plaintiff's performance; a further issue of fact fore resolution by the Jury. Yet, either way, Storey admits that he didn't talk to Geist about the idea of terminating Bell until very soon after he learned that Bell had reported harassment and her allegations were being investigated. Storey Dep. 139:17-140:14. Because there is an issue of fact as to whether the report of harassment and the decision to look at performance issues of Plaintiff was made almost contemporaneously, Defendants' motion must be denied. Whether they started down the termination path days later or  a few weeks later; both are close enough, to constitute evidence of causation, in and of themselves.

In addition, the whole idea of evaluating proximity in time is based on the obvious connection that "[r]etaliation often follows quickly upon the act that offended the retaliator." *Coszalter, supra*, 320 F.3d at 978.  Here, Storey testified that there could be an "obvious connection" based on the timing of his efforts to terminate Plaintiff and the protected conduct. He testified he tried to make his recommendation to terminate independently of the allegations because he had anticipated that plaintiff could make an "obvious connection" between the termination and the complaint of harassment. Storey Dep. 145:16-14. Yet, the fact that Storey made such an "obvious connection" suggests that a jury, too, could make such an "obvious connection," especially with the lack of evidence that Storey was even considering terminating Plaintiff's employment until right after he learned of the harassment complaint.  See also Storey Dep. 101:17-103:22. (Storey,

**Page 21 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Rotrock, Geist and others meeting to discuss the harassment of Bell and the need to "screen off" Storey from the investigation while he evaluated any potential performance issues of Plaintiff.). Both because of the short proximity of time between the termination and the complaint and Storey's acknowledgement of a potentially "obvious connection" between the two, Defendants' motion regarding causation must be denied.

> ii.   Bell Establishes A Causal Link Based On Pretext

While Plaintiff could rely on temporal proximity alone as evidence of retaliatory intent, Plaintiff does not. Plaintiff has significant additional evidence that the defendants' proffered explanation of the adverse employment actions is false and pretextual which further requires denial of Defendants' motion.

The plaintiff may show pretext by showing that unlawful discrimination more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Dominquez-Curry, supra,* 424 F3d at 1037.  Evidence of pretext creates an issue of fact on a claim of retaliation. *Herbert v Altimeter, Inc.,* 230 Or App 715, 723, 218 P3d 542 (2009).  Evidence that an employers' stated reason for termination is false fits the narrowest definition of pretext evidence because it tends to show that the employer is lying. See, e.g., *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir 2001) (summary judgment reversed because of conflicting accounts by two supervisors of events that led to plaintiff's discharge*); EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–853 (4th Cir 2001) (summary judgment reversed because of employer's offer of different justifications at different times for its failure to hire plaintiff). A party's dishonesty about a material fact may be considered as affirmative evidence of guilt.  *See Ireland v. Mitchell*, 226 Or 286, 292–295, 359 P2d 894 (1961); See also 9th Cir UCJI 1.14, Credibility of Witnesses

**Page 22 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

("If you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.)

Here, the evidence of pretext includes Plaintiff's evidence that the reasons for termination lack credence, that Defendant failed to follow its employment policies or practices regarding both discipline and how it investigated Plaintiff's concerns of harassment; that Plaintiff has a history of good performance;  that there is evidence of discrimination against others who opposed sex discrimination pursuant to a retaliatory culture at the County; and that there is evidence of mendacity by Storey that requires denial of Defendants' motion. . While any of these alone are sufficient to deny Defendants' motion, viewed together they provide substantial reasons why Defendants' motion must be denied.

      iii.   Defendants' Reasons for Termination Are Unworthy of Credence.

"Proof defendant's explanation is unworthy of credence is one form of circumstantial evidence that is probative of 'an impermissible motive', and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods*. Inc., 530 U.S. 133, 147 (2000).  Defendants argue that it terminated Plaintiff for chronic poor performance.   Plaintiff denies that she engaged in poor performance and offers proof, from both her colleagues—who provided positive feedback to Storey—and by her former supervisor Bays, as referenced above. Bays was so shocked by the termination that she, on her own, reported it as being clearly retaliatory and not based on performance. This alone is evidence that a jury should view to determine whether the stated reasons for termination are true or false. Even Storey admits that Plaintiff was not counseled for poor performance even though, in statements and documents provided to Geist in support of termination, he indicated the opposite. These are clear issues of fact as to Defendants' motivations in the termination that require denial of Defendants' motion.

**Page 23 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Further, in retaliation cases, causation and pretext inquiries often overlap. *Emeldi v. University of Oregon*, 638 F.3d 715, 729-730 (9th Cir. 2012).   Thus, when these additional facts are viewed in the context of Plaintiff's arguments in Section III(c)(1) regarding proximity of time, the fact that Defendant didn't even consider termination of Plaintiff until right after it heard of Plaintiff's report of sexual harassment is additional evidence as to pretext that denies denial of the motion.

      iv.  Defendants Failed To Follow Its Own Policies In Both Its Termination Of Plaintiff And Its Handling Of Plaintiff's Complaints And Its Investigation Into Plaintiff's Harassment Concerns Was A Sham.

 An employer's disregard for its own company policies or failure to follow its normal practices  is evidence of pretext. *Diaz v. Eagle Produce, Ltd.,* 521 F.3d 1201, 1214 (9th Cir. 2008);  *Village of Arlington v Metropolitan Housing Development Corp*, 429 US 252, 267 (1977);  *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011)(holding plaintiff may raise a triable issue of pretext through evidence the employer deviated from established policy or practice to plaintiff's disadvantage); *see also Porter v. Cal. Dep't of Corr.*, 383 F.3d 1018, 1026 (9th Cir. 2004) (employer's deviation from normal internal procedures creates issue of fact as to pretext).  Evidence that an internal investigation is done in bad faith is evidence of pretext. *Arnold v. Pfizer, Inc.*, 970 F Supp 2d 1106, 1138 (D Or 2013).

Defendants did not follow its disciplinary policies in how it handled Plaintiff's complaint of discrimination, taking shortcuts at every turn.  Defendants violated standard practices by having multiple people do the investigation, instead of one person. Bays testified this violated County practices and policies that supervisors generally and Eyerly specifically is trained on how to do sexual harassment investigations. Bays 92:17-93:25; Eyerly Dep. 93:9-20.  In addition to being done piecemeal—with Eyerly speaking to Rotrock and some combination of Knapp or Geist

**MATTHEW C. ELLIS, PC**
1500 SW First Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 345-5497

speaking to Plaintiff—the investigation into the allegations did not comply with requirements that defendant do a formal notice of investigation, which must be done when there is even the chance of discipline for a policy violation. Eyerly Dep. 50:5-23  Bays expected that there would be a notice of investigation to Rotrock and then a full and fair investigation of the allegations because that is how investigation are done to ensure fairness.  Bays Dep.  85:1-10.   Bays Dep. 102:9-13. This, too, violated County training.  Bays Dep. 97:10-98:23.

Eyerly didn't follow the protocol for a number of reasons. For example, Eyerly didn't want to do a notice of investigation because there was a larger than normal number of people under his supervision with Notice of Investigations at the time of the Rotrock incident, and it looked bad to have yet another one.  Eyerly Dep. 84:17-85:15. See also Ex 16 (Eyerly telling a colleague that "another NOI is not needed for anyone at this point" and that Rotrock "deserves recognition and respect for his efforts, not this.")  Thus, a jury could conclude that Defendants didn't follow policy and didn't take the allegations seriously for their own self-serving reasons.

Defendant also failed to follow its workplace violence policy. Both Bays and Geist agreed that the county workplace violence policy was potentially implicated by the report of harassment. Geist Dep. 76:18-77:17.  Bays Dep. 78:12-79:18. This policy required the report to be addressed with WES's safety manager, which did not occur. Ex 5, p 4-5. The policy required the information be gathered on the WES Threat incident report, which did not occur. Ex 5, p 4-5. There was a requirement for a written report, which had to be detailed and done in a specific manner, which also did not occur Ex 5., p 11-13. The policy claims to be a "zero-tolerance" policy" (Ex 5, p 1) but the policy wasn't followed in any way and Plaintiff was shown the door weeks later.

**Page 25 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Also, Defendants deviated from County policy that requires that termination and discipline not come as a surprise to an employee and that employees be given regular feedback on their work performance. Bays Dep. 111:6-11. Ex 3, p 2., Ex 4, p 1, 4. Defendants admit it follows a policy of progressive discipline and of communicating performance concerns clearly and contemporaneously. Geist Dep. 24:23-25:19; pp 46-48.   Yet, Storey admits he never counseled Plaintiff on her performance or followed progressive discipline and Plaintiff testified the termination was a huge surprise. Bell Dep. 65:24-66:9.   Bays, Bell's supervisor for half of her time with the County, agreed that the termination was unlikely to be performance based on her assessment.  Bays Dep. 138:15-22, 104:3-7. In addition, the manner in which the termination was done—relying on outside statements by co-worker without the employee's consent, also violated policy. Ex 2, p. 2. Storey's oversight was so bad, he was set to be counseled for his lack of feedback to Plaintiff; which never occurred because he resigned employment soon after.  Ex 27, p 7. Storey Dep. 147:10-148:10.

Evidence that an employer's deviation from established policy or practice worked to her disadvantage is evidence of pretext. *Earl v. Nielsen Media Research, Inc.*, 658 F3d 1108, 1117 (9th Cir 2011). Defendant's deviation from its policy was to Plaintiff's distinct disadvantage in many ways. Defendants' failure to implement progressive discipline deprived Plaintiff of the opportunity to tell her side of the story and correct any legitimate deficiencies in performance. Defendant's failure to provide notice of investigation to Rotrock meant that it could speed through the investigation—his likely goal—while Plaintiff was still an "at will" employee because, "it's easier to terminate someone in the probationary period than it is outside the probationary period" and "it takes a lot of time . . .and energy" to terminate someone if they are off probation.  See Geist Dep. 30:21-24; 117:7-9. Storey's failure to get consent before it reached

**Page 26 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

out to co-workers who had negative views of Plaintiff, and his ignoring of positive reports

(Storey Dep. pp 143-144) allowed Storey to present a one-sided narrative to support his

recommendation to Geist. Defendants' failure to follow the workplace violence policy not only

shows that they didn't take the concerns seriously even before they were investigated but ensured

that there was not a formal investigation or report into the allegations at all. This evidence is

"consistent with the view that [Defendant ] disregarded company policy because it conflicted

with [an] intent to discriminate." *Diaz, supr*a, 521 F.2d at 1214.  The Defendant's motion must

be denied.

   In addition, evidence that an internal investigation is done in bad faith is evidence of

pretext.  *Arnold v. Pfizer, Inc.*, 970 F Supp 2d 1106, 1138 (D Or 2013). A

"sham" investigation can be evidence of a company's lack of good faith efforts to comply with

anti-discrimination law. *Hooks v. Works*, 14 F App'x 769, 772 (9th Cir 2001).  In addition to

violating policy and practice in how they did the investigation, the fact that Eyerly overlooked

conflicting and evasive answers by Rotrock, and then told Geist that "there is nothing about

Kevin's body language, pitch of voice or any change in the cadence of words that indicated he

had any concern about what he said or happened that night. It was my observation that Kevin

was telling me what he believed to be the truth" creates factual issues as to whether the

investigation was in good faith, or sham designed to dispose of her complaint and quickly move

toward termination of her employment; which is precisely what occurred.  Ex 15: Eyerly Dep. pp

72-75.  Summary judgment must be denied.

   v.  Plaintiff Has A History of Good Performance.

   One's record of positive performance reviews creates an issue of fact when a plaintiff is

later terminated for poor performance.  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970-

**Page 27 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

971 (9th Cir. 2001) (history of outstanding performance creates issue of fact as to whether

performance-based reduction in pay was retaliatory); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202

F.3d 424, 433 (1st Cir. 2002) (history of positive performance and evidence that other employees

involved in violations were not disciplined creates issue of fact as to whether claims of deficient

performance were pretext); *Bevan v. Honeywell, Inc*., 118 F.3d 603, 610 (8th Cir. 1997)

(evidence of employee's history of positive performance creates issue of fact as to adverse action

based upon performance).

Plaintiff performed well. Storey never counseled her on her performance—despite

policies requiring him to do so—and Bays saw Plaintiff's work as very positive. Other

colleagues of Plaintiff's agreed and told Defendants as much at the time.  Ex 30-32 and 45-47.

Plaintiff testified Storey never provided critiques or negative feedback of her performance and

Storey doesn't entirely disagree with this assessment.  Storey Dep. pp 137-139. Ex 27, p 5. Bays

was so shocked by the termination that she immediately assumed it was retaliatory  since the

decision did not comport with her supervision of Plaintiff, in any way.   Plaintiff's positive

performance, as reported by Bays, Plaintiff, Plaintiff's co-workers and others, creates an issue of

fact as to pretext, especially when viewed in context with Defendant's violation of policy and

other evidence of retaliatory intent and causation.

> vi.   There Is An Issue Of Fact As To Defendant Clackamas County's
> Retaliatory Culture And Treatment Of Women.

Circumstantial evidence of a "discriminatory atmosphere at plaintiff's place of

employment" or a discriminatory "corporate state of mind" is relevant to motive in an individual

discrimination case.  *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987).  Proof

of a discriminatory atmosphere may indicate the reasons given for an employment action were

implicitly influenced by discrimination.  *Id.*

**Page 28 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

One way to prove an inference of causation and unlawful conduct is to offer "testimony from protected class members detailing specific instances of discrimination." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir. N.Y. 2001).  A defendant's conduct tending to demonstrate hostility toward a certain group is relevant to proving motive and intent in such cases.  *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995); *see also Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988) (evidence of past harassment and evidence of discrimination against others in the protected class is admissible); *c.f. Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant [employer] is relevant to the issue of the employer's discriminatory intent.").  The probative value such testimony "is especially high 'because of the inherent difficulty of proving state of mind.'"  *Heyne*, 894 F.2d at 1480 (quoting *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir.1988).

This kind of evidence tends to show that (1) a defendant's position that it did not engage in the unlawful conduct is without credence, (2) defendant's intent and/or motive to engage in unlawful conduct, and (3) defendant's treatment of plaintiffs is not accidental and consistent with its standard operating procedure. *See Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 336 (1977); *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005); *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995).  Here, there is evidence that Bays, who opposed the retaliation, was terminated soon after both the report of sex retaliation against Plaintiff *and* after reporting an additional act of sex discrimination against by a powerful colleague. *Confidential Ellis Decl.,* Bays Dep. pp 119-123. While Plaintiff has significant evidence of pretext, this factual question of whether Defendant has a culture of retaliation against women who oppose sex discrimination further requires denial of Defendants' motion because circumstantial evidence of a "discriminatory atmosphere at

**Page 29 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

plaintiff's place of employment" or a discriminatory "corporate state of mind" is relevant to motive in an individual discrimination case. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987).

        vii.  Storey's Mendacity Creates An Issue Of Fact As To Pretext And Causation.

An employer's mendacity creates an issue of fact on causation and to intent. *Chuang v University of California Davis*, 225 F3d 1115, 1123 (9th Cir 2000); *St. Mary's Honor Ctr. v. Hicks*, 509 US 502, 511 (1993) (same). Here, there is substantial evidence of Storey's mendacity. Bays chronicled in her testimony his propensity to lie and his reputation truthfulness. Further, she relayed on these concerns to Knapp after Plaintiff was terminated since it was part of why she questioned the legitimacy of the decision. This testimony comes even more into focus when viewed with the evidence that Storey apparently told Geist that he had counseled Plaintiff on her employment over six months and provided "written feedback on performance expectations and alleged declines in performance," but that Storey ultimately conceded that he had, in fact, not do so at all. Geist Dep. 121:20-122:5. Issues of fact as to Storey's honesty compel denial of Defendants motion.

## IV.   SUMMARY.

For the reasons set forth above, the Court should deny Defendant's motion for summary judgment in its entirety.

DATED this 19th  day of December, 2023.


          s/ Matthew C. Ellis         

          Matthew C. Ellis, OSB #075800
          Matthew C. Ellis, PC

**Page 30 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1500 SW First Avenue, Ste 1000
Portland OR  97201
Telephone: 503/345-5497
matthew@employmentlawpdx.com

Attorney for Plaintiff

**Page 31 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**